United States Court of Appeals,

Fifth Circuit.

No. 94-60861

Summary Calendar.

Steve KNIGHT, Jr., d/b/a Steve Knight Steel Fabricators and Steve Mark Knight, as the Administrator of the Estate of Willie Steve Knight, Jr., Plaintiffs,

Steve Knight, Jr., d/b/a Steve Knight Steel Fabricators, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY & GUARANTY INS. CO. and Chicago Insurance Co., Defendants,

United States Fidelity & Guaranty Ins. Co., Defendant-Appellee.

Sept. 21, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before KING, SMITH and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Plaintiff-Appellant Steve Mark Knight ("Knight") appeals an adverse summary judgment granted in favor of Defendant-Appellee United States Fidelity & Guaranty Insurance Company's ("USF & G"). The district court found that USF & G's act of withdrawing its defense for Knight in a wrongful death action was reasonable because there was no indication, from the information uncovered by USF & G in its investigation, that the vehicle driven by Knight's employee was covered under USF & G's insurance policies, or that Knight's employees was acting in the course of his employment at the time of the accident. Therefore, the court concluded that there was no basis for the imposition of punitive or

extracontractual damages against USF & G.  Finding no reversible error, we affirm.

FACTS AND PROCEDURAL HISTORY

Steve Knight, Jr. ("Knight, Jr."), owner of Steve Knight Steel Fabricators, Inc. ("Knight Steel"), operated a barge steel fabrication plant at Port Bienville in Pearlington, Mississippi and a gravel pit in Nicholson, Mississippi.  Knight, Jr.'s insurance agent, Burt Young ("Young") of Crystal Springs Insurance Agency ("Crystal"), an authorized USF & G agency, issued Knight three insurance policies for his business;  a business auto policy, a trucker's policy, and a general liability policy.  The policies covered all of the vehicles Knight, Jr. used in his business.

Gary Brock ("Brock"), an employee of Knight, Jr., was required, on occasion, to be available around-the-clock seven days a week.  During these periods, Brock lived at the steel fabrication plant in a rent-free mobile home.  On June 1, 1984, Brock purchased one of Knight, Jr.'s company pick-up trucks.  Knight, Jr. assisted Brock in obtaining financing for the truck through a Louisiana bank, and assisted Brock in obtaining insurance coverage with Young at Crystal.  At that time, Knight, Jr.'s bookkeeper notified Crystal that the truck was no longer Knight, Jr.'s property.

On July 6, 1984, Brock had been working at the gravel pit.  He then drove to Slidell, Louisiana to visit a friend.  As he was driving back to the steel fabrication plant in the truck he purchased from Knight, Jr., Brock collided with another vehicle driven by Mary Virginia Buice ("Buice") and fatally injured her.

Brock was intoxicated at the time of the accident.

On August 17, 1987, Buice's estate filed a wrongful death suit against Knight Steel and Time Saver Stores, Inc. alleging that Knight, Jr. was liable because Brock was acting within the scope of his employment at the time of the accident.[1] Stanford Morse, Jr. ("Morse"), who was retained by USF & G as counsel for Knight Steel in August 1988, filed an answer On August 12, 1988 admitting Brock's negligence, but denying that he was acting within the scope of his employment at the time of the accident.

In the course of its investigation, USF & G determined that none of the three insurance policies provided coverage for the accident. Darwin Ezell, a claims adjuster at USF & G, informed Morse that there was no coverage under the policies, and advised Morse that USF & G did not owe Knight Steel a duty to defend. Morse subsequently met with Knight, Jr., informed him that there was no coverage under the policies and told Knight, Jr. that he would have to retain his own attorney. Morse also sent a letter to Knight, Jr. dated September 21, 1988, stating that USF & G "does not insure the above-referenced claim," and informing him that a motion to withdraw as counsel for Knight Steel would be filed. On September 22, 1988, Morse filed his motion to withdraw. Knight, Jr. did not file an objection to the motion. Morse was allowed to withdraw as attorney of record for Knight Steel on January 23, 1989.

---

[1]An amended complaint, filed December 27, 1988, added Knight, Jr. individually d/b/a Knight Steel as a defendant.

3

After Morse withdrew, Knight, Jr. consulted with attorney Joseph H. Montgomery ("Montgomery") about the wrongful death suit. On February 8, 1989, Montgomery wrote a demand letter to USF & G, and sent copies of the letter to Crystal and counsel for the Buice estate. Morse responded by indicating that the policies did not cover the Buice estate claims.

On March 28, 1989, the Buice estate filed a motion to strike Knight Jr.'s answer and for entry of default judgment against Knight, Jr. On June 18, 1990, the district court entered default judgment for $1,173,591.00. The Buice estate then instituted a garnishment action against USF & G.

On August 1, 1991, Knight, Jr. filed suit against USF & G seeking punitive damages for tortious breach of contract and bad faith. Knight, Jr. subsequently died, and Steve Mark Knight, Administrator of the Estate of Willie Steve Knight, Jr.[2], was substituted as the party plaintiff in place of Steve Knight, Jr. d/b/a Steve Knight Steel Fabricators on May 12, 1994. Knight's suit was consolidated with the Buice estate's wrongful death and garnishment action, but was severed just before trial began on the garnishment action. The garnishment action proceeded to trial without a jury on December 14, 1992.

On April 20, 1994, the district court entered its bench opinion releasing USF & G from the writ of garnishment. The court concluded that no coverage existed under any of the USF & G

_____

[2]Willie Steve Knight, Jr. and Steve Knight, Jr. are one and the same.

4

policies; specifically finding that at the time of the accident Brock was not using the pick-up truck solely for business purposes as required under the provisions of the applicable business auto policy to trigger coverage.[3]

USF & G filed a motion for summary judgment in Knight's bad faith action claiming that the bench opinion in the garnishment action disposed of all claims in the bad faith action because with no coverage there is no duty to defend, and that as a matter of law the bench opinion established that USF & G had an arguable or legitimate reason not to defend Knight in the underlying action. On November 16, 1994, the district court granted USF & G's summary judgment motion, and subsequently entered final judgment dismissing Knight's bad faith action. Knight now appeals the summary judgment order and final judgment of the district court.

### STANDARD OF REVIEW

We review the district court's summary judgment *de novo.* *Bodenheimer v. PPG Industries, Inc.,* 5 F.3d 955, 956 (5th Cir.1993). Summary judgment is appropriate when there exists no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c). "The construction and effect of an insurance policy are questions of law reviewable *de novo.*" *E.E.O.C. v. Southern Pub. Co., Inc.,* 894 F.2d 785, 789 (5th Cir.1990) (citing *Diversified Group, Inc. v. Van Tassel,* 806 F.2d 1275, 1277 (5th Cir.1987)).

---

[3]A separate appeal on the garnishment action is now pending before this Court.

## DUTY TO DEFEND

Part IV of the business auto policy issued to Knight by USF & G and in effect at the time of the accident at issue in this case provides in pertinent part:

A. WE WILL PAY

1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

2. We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this policy. We may investigate and settle any claim or suit as we consider appropriate. Our payment of the LIABILITY INSURANCE limit ends our duty to defend or settle.

The business auto policy also contains a non-owned vehicle endorsement, which states as follows:

It is agreed that the unqualified word "insured" wherever used in Part IV—Liability Insurance includes only you and any organization legally responsible for the use of the automobile, provided the actual use of the automobile is by you or with your permission.

Exceptions: The foregoing limitation does not apply with respect to private passenger automobiles, or to operation of other automobiles while being used solely for business purposes in connection with your business.

Knight contends that USF & G became contractually obligated to defend him, pursuant to his insurance policies, as soon as he was served with the Buice estate's complaint alleging wrongful death caused by the negligence of Knight's employee, Brock. He argues that USF & G's contractual obligation to defend the action remained in effect despite the fact that USF & G's investigation revealed that the vehicle involved in the accident was no longer covered

6

under any of the insurance policies because the language non-owned vehicle endorsement arguably still covered Brock's actions at the time of the accident. Specifically, Knight asserts that the use of the word "solely" in the non-owned vehicle endorsement does not intend to prevent coverage where a mission combines elements of both business and personal affairs of the employee if the accident occurs at a time when the employee is acting in the course and scope of the business of his employer.

Under Mississippi law, the determination of an insurer's duty to defend an action is accomplished by measuring the allegations in the plaintiff's pleadings without regarding the ultimate outcome of the action. *Southern Pub. Co. Inc.,* 894 F.2d at 789. The Buice estate complaint alleges that Brock, an employee of Knight, was in the course and scope of his employment when he negligently, carelessly and recklessly drove a truck across the center line of the highway and struck Buice's vehicle, causing her death. The district court found that at the time that USF & G attorney Morse filed his motion to withdraw as counsel for Knight there was no indication that the truck driven by Brock was covered under any of the USF & G policies. We agree. When Knight sold the truck to Brock, he notified USF & G, through Crystal, that he no longer owned the truck. USF & G's investigation also revealed no indication that Brock was acting within the course and scope of his employment. At the time of the accident, Brock was out driving at approximately midnight while under the influence of alcohol. Therefore, it was reasonable for USF & G to conclude that Brock was

7

not operating the truck solely for the business purposes of Knight as required for coverage under the non-owned vehicle endorsement of the business auto policy.

Having concluded that USF & G did not have a duty to defend Knight in the Buice estate action, we further find no basis for the imposition of punitive or extracontractual damages against USF & G. *See Hans Constr. Co. v Phoenix Assurance Co. of New York,* 995 F.2d 53, 55 (5th Cir.1993) (punitive damages unavailable if insurer has a legitimate or arguable reason for denying coverage) (citing *Universal Life Ins. Co. v. Veasley,* 610 So.2d 290, 293 (Miss.1992)).

## CONCLUSION

For the reasons articulated above, the judgment of the district court is AFFIRMED.