United States Court of Appeals,

Fifth Circuit.

No. 96-60731.

AMERICAN STATES INSURANCE COMPANY, Plaintiff-Counter-Defendant-Appellee,

v.

NATCHEZ STEAM LAUNDRY, a Division of Vicksburg Laundry,

and

James Simmons, Defendants-Counter-Claimants-Appellants.

Jan. 6, 1998.

Appeal from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, SMITH and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The district court granted summary judgment for American States Insurance Company ("American States"), holding that it had no duty to defend its insureds, Natchez Steam Laundry ("Natchez") and the laundry's owner, James Simmons, from an Equal Employment Opportunity Commission ("EEOC") lawsuit alleging intentional sexual harassment. The court also granted American States summary judgment on the insureds' counterclaim, dismissing their contention that the insurance agent had orally modified the contract and that American States had acted in bad faith. Finding no error, we affirm.

I.

In February 1995, the EEOC sued Natchez and its chief executive officer and owner, James Simmons, charging various

1

employment-related offenses, including hostile work environment, *quid pro quo* sexual harassment, retaliation, and constructive discharge. The agency further alleged that "[t]he unlawful employment practices complained of were and are intentional."

Natchez and Simmons turned to American States, demanding defense of, and coverage for, the EEOC claims. Two policies were in effect at the time of the alleged harassment: a comprehensive general liability policy and an umbrella policy. After receiving advice from its lawyers, American States denied coverage.

American States then sought a declaratory judgment that it had no duty to defend either insured, claiming that the charged offenses fell squarely within the intentional-acts exclusion to the policies.[1] Natchez and Simmons disputed this conclusion and claimed that any touching, if it even occurred, was purely accidental—the inevitable result of the close working quarters in the laundry.

Natchez and Simmons also counterclaimed, arguing that the American States agent who sold Simmons the policies had represented that lawsuits for sexual harassment were covered. Natchez and Simmons further contended that American States's failure to investigate the facts underlying the EEOC charges constituted bad faith. The district court granted summary judgment for American States.

II.

---

[1]American States also invokes the employer liability exclusion, but we do not reach that issue.

We review grants of summary judgment *de novo*. *Knight v. United States Fidelity & Guar. Ins. Co.*, 65 F.3d 34, 36 (5th Cir.1995). "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination meriting *de novo* review." *National Union Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 198 (5th Cir.1990). Under Mississippi law—which both sides agree governs interpretation of the policies—ambiguities regarding defense obligations are construed strictly against the insurer. *Mulberry Square Prods., Inc. v. State Farm Fire & Cas. Co.*, 101 F.3d 414, 420 (5th Cir.1996).

## III.

Both policies contain an intentional-acts exclusion, providing that coverage does not extend to bodily injury or property damage "expected or intended from the standpoint of the insured." American States argues that the injuries alleged in the EEOC complaint come within this exclusion.

## A.

The general rule in Mississippi is that an insurer's duty to defend hinges on the allegations in the underlying complaint. *State Farm Mut. Auto. Ins. Co. v. Taylor,* 233 So.2d 805, 808 (Miss.1970). Under Mississippi law, "an insurer's duty to defend an action against its insured is measured by the allegations in the plaintiff's pleadings regardless of the ultimate outcome of the action." *EEOC v. Southern Pub. Co.,* 894 F.2d 785, 789 (5th Cir.1990).

The EEOC complaint states that "[t]he unlawful employment practices complained of were and are intentional." The policies exclude coverage for damages resulting from intentional acts by the insured. We agree with American States that Simmons's alleged conduct falls squarely within the policy exclusions.

There is, however, a narrow exception to the general rule: Mississippi courts impose a duty to defend upon an insurer who has knowledge, or could obtain knowledge through a reasonable investigation, of the existence of facts that trigger coverage. In *State Farm,* 233 So.2d at 808, the court observed that "a divergence may exist between the facts as alleged in the petition and the actual facts as they are known to or reasonably ascertainable by the insurer, in which latter case the insurer has a duty to defend...." Similarly, in *Meng v. Bituminous Cas. Corp.,* 626 F.Supp. 1237, 1241 (S.D.Miss.1986), the court noted that "where the complaint alleges facts which fall within a policy exclusion, the insurer is not obligated to defend unless it later learns or is apprised of facts which indicate coverage."

Natchez and Simmons argue that since they promptly notified American States that any touching was unintentional, American States knew of "facts" that triggered its duty to defend. This argument fails for a simple reason: Natchez and Simmons have not supplied "facts" that indicate coverage. Simmons's contention that his bawdy behavior was accidental is not a "fact," but only an assertion.

Were we to accept Simmons's legal argument, an insured could

4

trigger the duty to defend merely by denying the allegations in the complaint. Allowing Simmons to defeat the intentional acts exclusion in this way would increase the investigatory burden on insurers and eviscerate Mississippi's general rule—that an insurer can determine whether it has a duty to defend by comparing the complaint to the policy.

## B.

Although Mississippi courts have skirted the issue, some courts in this circuit have deemed sexual harassment an intentional act as a matter of law. *See, e.g., Old Republic Ins. Co. v. Comprehensive Health Care Assocs.,* 786 F.Supp. 629, 632-33 (N.D.Tex.1992), *aff'd,* 2 F.3d 105 (5th Cir.1993). Other courts reach the same destination by a different route, holding that sexual harassment is not an "occurrence" and therefore is excluded from coverage. *See, e.g., Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 88 (5th Cir.1997). Because we rely on the plain language of the EEOC complaint, which alleges intentional conduct, we need not reach this larger issue.

## C.

Even if Simmons's actions are found to be intentional, Natchez contends that *it* should not be held liable for its owner's conduct. Because the insurance policies treat Natchez and Simmons as separate insureds, Natchez argues that a finding that Simmons acted intentionally does not necessarily mean that Natchez did so.

Natchez directs us to *Western Heritage Ins. Co. v. Magic Years Learning Ctrs. & Child Care, Inc.,* 45 F.3d 85 (5th Cir.1995), a

case with similar facts that arose under Texas law.[2]  There, a former employee sued the Wilsons (the owners of a day care center) and the business itself, claiming that she had been sexually harassed by Mr. Wilson.  Mr. and Mrs. Wilson and the business were listed as separate insureds on the same policy.  The insurer denied coverage to all parties on the ground that sexual harassment is an intentional act and thus falls outside the definition of "occurrence."  The court agreed with the insurer that the policy did not cover Mr. Wilson—because his conduct was intentional—but held that Mrs. Wilson and the business were covered.  The court concluded:  "[T]he alleged acts or omissions are within the general definition of occurrence, because there is no contention that Mrs. Wilson or [the business] expected or intended to injure" the plaintiff.  *Id.* at 89.

The instant case differs from *Western Heritage* in one important respect:  Here, the underlying complaint charged that the *business* acted intentionally.  The *Western Heritage* plaintiff sued the business under a theory of *respondeat superior,* alleging gross negligence in entrusting Mr. Wilson with supervisory responsibility, in not providing a workplace free of sexual harassment, and in not providing an avenue for redress.  *Id.* at 87.  Here, the EEOC sued the business for similar conduct—failure to

---

[2]As noted in *New York Life Ins. Co. v. Travelers Ins. Co.,* 92 F.3d 336, 340 n. 4 (5th Cir.1996), parts of *Western Heritage* are inconsistent with our holding in *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124 (5th Cir.1993).  We do not attempt to reconcile this apparent conflict;  we discuss *Western Heritage* merely to illustrate that Natchez cannot prevail even under *Western Heritage's* more favorable standard.

investigate the complaints against Simmons, to take action against Simmons, and to provide an avenue for redress—but charged that these omissions were *intentional.*

Under Mississippi law, the EEOC's allegation of intent is sufficient to defeat coverage for Natchez. As we noted in *Jones v. Southern Marine & Aviation Underwriters, Inc.,* 739 F.Supp. 315, 324 (S.D.Miss.1988), *aff'd,* 888 F.2d 358 (5th Cir.1989), "[I]f a plaintiff's allegations against an insured are unequivocal with regard to claiming injury or damages caused by acts which, if proved, would place his claim within an exclusion from coverage, there is no duty to defend." Here, the allegations that Natchez acted intentionally are unequivocal. Accordingly, American States had no duty to defend.

IV.

In their counterclaim, Natchez and Simmons argue that American States is bound by the oral representations of its agent, Susan Loflin, who sold the policies to Simmons. Although they concede that ordinarily the written language of an insurance policy is binding, Natchez and Simmons suggest that Loflin told them that the policies covered "all liabilities," including claims for sexual harassment.

Under Mississippi law, the construction of an insurance contract is limited to examining the policy. *Employers Mut. Cas. Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426, 430 (1964). "The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that

7

the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Great N. Nekoosa Corp. v. Aetna Cas. & Sur. Co.,* 921 F.Supp. 401, 406 (N.D.Miss.1996).

Nonetheless, an agent's oral representations, when relied upon, sometimes can modify an insurance contract. *Scott v. Transport Indem. Co.,* 513 So.2d 889, 894 (Miss.1987) ("Certain verbal representations made by persons in authority may become ... parts of the contract."). But this special rule does not apply when the contractual language is plain. In *Godfrey, Bassett v. Huntington Lumber & Supply Co.,* 584 So.2d 1254, 1257 (Miss.1991), the court remarked that "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract."

As the district court noted, both policies patently exclude claims for injuries stemming from intentional acts by the insured. There is no suggestion that the contractual language is ambiguous. Finally, it is difficult to understand how Simmons reconciled his belief that he was covered for "all liabilities" with the multi-page lists of exclusions.

V.

Natchez and Simmons accuse American States of bad faith and seek punitive damages. They charge American States with failing to investigate the allegations underlying the EEOC complaint before denying coverage.

The Mississippi Supreme Court recently addressed an insurer's

8

duty to investigate.  In *Murphree v. Federal Ins. Co. & Inst. for Tech. Dev.,* No. 94-CA-00669-SCT, 1997 Miss. LEXIS 145, --- So.2d ---- (Miss. Apr. 10, 1997), the court held that

> although it is well settled under Mississippi law that an insurance company has a duty to investigate promptly and adequately an insured's claim ... a plaintiff's burden in proving a claim for bad faith refusal goes beyond merely demonstrating that the investigation was negligent.... [T]his level of negligence in conducting the investigation must be such that a proper investigation by the insurer "would easily adduce evidence showing its defenses to be without merit."

*Id.* at *21, --- So.2d at ---- (citing *Merchants Nat'l Bank v. Southeastern Fire Ins. Co.,* 751 F.2d 771, 777 (5th Cir.1985)).

Natchez and Simmons have supplied no persuasive evidence that American States acted maliciously or committed anything approaching an intentional tort.  Nor would an investigation have "easily" uncovered evidence showing its defenses to be "without merit." American States obtained the opinion of counsel, then properly denied the claim after reviewing the EEOC's allegations and the insurance policies.  Its investigation hardly reaches the heightened level of negligence required for bad faith under Mississippi law.

AFFIRMED.

9