# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2015

Lyle W. Cayce
Clerk

No. 14-60302

NATIONWIDE MUTUAL INSURANCE COMPANY,

Plaintiff – Counter Defendant – Appellee

v.

GUM TREE PROPERTY MANAGEMENT, L.L.C.; THE SOUTHERN
GROUP OF MISSISSIPPI, INCORPORATED; WILSON COLEMAN,

Defendants – Counter Claimants – Third
Party Plaintiffs – Appellants

v.

THE NOWELL AGENCY, INCORPORATED; GREG BOST,

Third Party Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:12-CV-181

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Nationwide Mutual Insurance Company sought a declaratory judgment
that it had no duty to defend or indemnify insureds in a suit filed in Kentucky

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-60302

state court.    The district court granted summary judgment in favor of Nationwide and the third-party defendants.    The insureds now appeal.    We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

The claim that Nationwide had a duty to defend and indemnify arose from litigation brought in Kentucky state court by Lexington Relocation Services, LLC against three parties whom we will call the "Gum Tree Defendants": Gum Tree Property Management, LLC; The Southern Group of Mississippi, Inc.; and Wilson Coleman.  The plaintiff Lexington is a corporate housing company that provides relocation services in several states.  These defendants rent and manage real estate in the Tupelo, Mississippi area. Coleman is the president of both Gum Tree and The Southern Group.

In the Kentucky litigation, Lexington claimed that one of its former employees, Misty McGuire, had violated her obligations to Lexington while working for these defendants.  Lexington had hired McGuire in 2003 as an account specialist.  McGuire signed an employment agreement that prohibited her from using or disclosing confidential information; working for or assisting any entity that competed with Lexington within the business jurisdiction for one year; working within the Lexington area for one year; and directly or indirectly soliciting any of Lexington's clients, customers, or employees.

McGuire resigned from Lexington in July 2010.  Lexington alleges that McGuire almost immediately went to work for the Gum Tree Defendants performing substantially the same marketing and sales tasks that she had previously performed, in violation of her employment agreement.  Lexington claims that the Gum Tree Defendants were aware of the restrictions on McGuire but solicited and received confidential information from McGuire and used it to solicit Lexington's current and prospective customers, causing Lexington to suffer prejudice and incur damages.

2

No. 14-60302

Lexington brought claims for: (1) tortious interference with contractual relations, (2) tortious interference with actual and prospective business advantages, (3) civil conspiracy, (4) conversion, (5) breach of fiduciary duty, (6) breach of duty of loyalty, (7) aiding and abetting a fiduciary breach, (8) misappropriation of trade secrets, (9) fraud, (10) negligent misrepresentation, (11) unjust enrichment, (12) unfair competition, and (13) negligence per se.

After Lexington filed suit, the Gum Tree Defendants demanded that Nationwide provide a defense and indemnify them from any judgment. The Gum Tree Defendants had nine different general commercial liability and umbrella policies provided by Nationwide. Five policies were issued to The Southern Group and four were issued to Gum Tree.

Coleman purchased the policies from Greg Bost, an agent with the Nowell Agency. The Gum Tree Defendants assert that Bost was their exclusive insurance agent, and that Coleman directly contacted Bost with coverage and claims questions. Coleman allegedly never reported a claim directly to Nationwide, as Bost was his liaison.

The Gum Tree Defendants assert that sometime in July or August 2011, shortly after being served with the complaint, Coleman called Bost to tell him that the Gum Tree Defendants had been or were in the process of being sued. Bost recalls the conversation but disputes that Coleman informed him that the Gum Tree Defendants were being sued. According to Bost, Coleman was only "vaguely complaining about a problem."

On March 14, 2012, eight months after being served, Coleman e-mailed Bost to ask if Nationwide would provide coverage for the lawsuit. Bost responded the next day and requested a copy of the complaint. The attorney for the Gum Tree Defendants e-mailed the complaint to a Nationwide adjuster. The Gum Tree Defendants assert that in this e-mail their attorney informed Nationwide that they denied all allegations of intentional wrongdoing.

3

No. 14-60302

Nationwide sent Coleman a letter on May 1 informing him that it was still investigating the claim but, pending a final determination, denied a duty to defend or indemnify.

Nationwide formally denied coverage on July 12 and 17, 2012. It then brought this suit in the United States District Court for the Northern District of Mississippi. It sought a declaration that it had no duty to defend or indemnify. The Gum Tree Defendants counterclaimed and also filed a third-party complaint against Bost and the Nowell Agency, alleging breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and negligence. All of the parties filed motions for summary judgment.

The district court issued two separate opinions granting summary judgment for Nationwide, Bost, and the Nowell Agency. In the first opinion, the district court agreed with Nationwide that it had no duty to defend or indemnify in the Kentucky litigation. Based on this holding, the court issued a second opinion in favor of Bost and the Nowell Agency. The Gum Tree Defendants appeal both decisions.

DISCUSSION

This court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Catlin Syndicate Ltd. v. Imperial Palace of Miss., Inc.*, 600 F.3d 511, 513 (5th Cir. 2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a). "Under Mississippi law, construction of an insurance policy presents a question of law, which we review *de novo*." *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 688 (5th Cir. 2014) (citation omitted).

4

No. 14-60302

*I. True Facts Exception*

Under Mississippi law, "an insurance company's duty to defend its insureds derives neither from common law nor statute, but rather from the provisions of its policy . . . ." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 450 (Miss. 2006). In most instances, an insurer's "duty to defend is neither greater nor broader than the duty to comply with its other contractual obligations." *Id.*

Whether an insurer has a duty to defend is primarily determined by comparing the policy language with the allegations in the underlying complaint or declaration. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997) (citation omitted). "An insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy." *Baker Donelson*, 920 So. 2d at 451.[1]

There is a narrow exception to this general rule. Even if the allegations in the underlying complaint do not trigger coverage, an insurer still has a duty to defend if the insurer learns of facts — not mere assertions — that support the existence of coverage:

> [W]here, through independent investigation, an insurer becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage.

---

[1] Some states, such as Texas, refer to this as the "eight-corners rule," because what is within the four corners of the policy is compared with the assertions within the four corners of the complaint. *See, e.g.*, *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 (Tex. 2006). Mississippi case law does not recognize that term, though some of this court's opinions have affixed the label to the similar analysis under Mississippi insurance law. *See, e.g.*, *QBE Ins. Corp. v. Brown & Mitchell, Inc.,* 591 F.3d 439, 443 (5th Cir. 2009).

No. 14-60302

*Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011) (citing *Mavar Shrimp & Oyster Co., Ltd. v. U.S. Fid. & Guar. Co.*, 187 So. 2d 871, 875 (Miss. 1966)).

We just described the exception as "narrow" because the Mississippi courts have applied the exception only when the insured becomes aware that the "true facts" of the events leading to the claim support at least a duty to defend. For example, in one of the more recent cases, the insurance company investigated the claim and discovered — contrary to the complaint — that its insured, who was covered only under a home-owner's policy, admitted that the structure subject to the claim was actually rental property. *See Lipscomb*, 75 So. 3d at 560–61. Because the person seeking coverage admitted to his insurer facts proving there was no coverage, there was no duty to defend. *Id.*

In an earlier case, we discussed the Mississippi doctrine in a manner relevant to the case before us now. *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 553 (5th Cir. 1998). There, the insured argued that its insurer had notice of true facts that triggered the duty to defend. *Id.* The complaint alleged that the insured had acted intentionally at its laundry when it engaged in bawdy behavior toward the plaintiff; the conduct constituted sexual harassment and created a hostile work environment. *Id.* at 552. Based on the assertions, the insurer determined there was no coverage because of an intentional-act exclusion in the policy. *Id.* at 552–53. The insured, though, argued that by informing the insurer that it denied acting intentionally, it created a "true fact" sufficient to trigger the duty to defend. *Id.* at 553. This court disagreed. We held that a denial "is not a 'fact,' but only an assertion." *Id.* A contrary conclusion would allow an insured to "trigger the duty to defend merely by denying the allegations in the complaint." *Id.*

The Gum Tree Defendants suggest that Nationwide's duty to defend was triggered after it presented the insurer with various pleadings and evidence.

Their answer denied any intentional conduct. Coleman, president of the other two Gum Tree Defendants, also presented a sworn affidavit that denied any intentional conduct. The Gum Tree Defendants claim that these documents establish the falsity of the underlying allegations. The district court determined that these items do not contain any true facts and are simply denials of the allegations in the complaint.

The general rule for determining whether the duty to defend has been triggered relies on what the plaintiff alleges, regardless of what the defendant denies, and compares the allegations to the policy language. Perhaps more often than not in duty-to-defend cases, it is the plaintiff's claim that creates coverage. Here, though, as in *Natchez Steam Laundry,* the plaintiff's claim presents a case excluded from the coverage provided by the relevant policies. We do not interpret the "true facts" rule to require an insurance company, when the claim is outside coverage, to consider the denials in an answer when deciding whether to defend or to review affidavits from the insured that support the denials. Such a rule would transform the narrow exception into a broad one. Mississippi case law does not support such a broad reading. Under our diversity jurisdiction, we will not extend this state-law doctrine to a place the state courts have not gone.

We agree with the district court that a determination of coverage in this case is limited to the underlying complaint.

*II. Personal Injury*

The Gum Tree Defendants claim that they are entitled to coverage because the underlying complaint contains allegations of a "personal injury." Each of the Nationwide policies extends coverage to a "personal injury" or a "personal and advertising injury."

7

No. 14-60302

The commercial general liability policies issued to The Southern Group define "[p]ersonal and advertising injury" to include "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or "oral or written publication, in any manner, of material that violates a person's right of privacy." The commercial general liability policies issued to the Gum Tree Defendants and one of the umbrella policies issued to The Southern Group contain nearly identical definitions of "personal and advertising injury."

The remaining two umbrella policies contain slightly different language. These policies define "personal injury" as an "injury, other than advertising injury, arising out of one or more of the following offenses committed during the policy period in the conduct of your business: . . . (2) The publication or utterance of libel or slander or of other defamatory or disparaging material, or [a] publication or utterance in violation of an individual's right of privacy."

The district court held that the allegations in the complaint do not fit within either of the definitions of personal injury, either as disparagement or invasion of privacy. We will analyze each definition.

A. Disparagement

The Gum Tree Defendants argue that the complaint alleges facts that fit within the "disparagement" category of "personal injury." They concede that the complaint does not contain explicit allegations of disparagement. Instead, they argue that allegations in the complaint describe conduct that is the equivalent of disparagement. For example, they argue in their appellate brief that Lexington's allegation that the Gum Tree Defendants "induced, persuaded or otherwise caused third parties not to enter into or continue their" relationship with Lexington, a claim the complaint labels as "tortious

8

interference," means that the Gum Tree Defendants must have disparaged Lexington in order to induce or persuade. They also argue that the complaint's allegation that defendants and third parties conspired to deprive Lexington of business opportunities constitutes an allegation that they conspired to disparage Lexington. Further, the damages claimed by Lexington are allegedly of the kind that would result from disparagement.

The district court found that there were "no allegations that the Gum Tree Defendants 'disparaged' Lexington Relocation while allegedly soliciting its current and prospective customers." The court explained that, because the policies do not define "disparage," the court may rely on the plain, ordinary, and popular understanding of the term. The court noted that, according to Merriam-Webster's Dictionary, disparage means "'to describe (someone or something) as unimportant, weak, bad, etc.; to lower in rank or reputation." Using this definition, the court reasoned that the complaint does not allege that the Gum Tree Defendants used the trade secrets or confidential information to disparage Lexington in any way.

The Gum Tree Defendants contend that the district court erred in failing to consider several court opinions it cited. All except one of the opinions are from state courts. None of those are courts in the relevant states of Kentucky or Mississippi. Those opinions are inconsistent with this court's precedent, as discussed below, and the district court's failure to apply them was not error.

In the most relevant precedent from this court, the insured argued that it was entitled to coverage because the underlying complaint alleged disparagement. *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 663 (5th Cir. 2005). The insured relied on language in the complaint alleging that it intentionally induced customers to terminate their contracts with the plaintiff; other language alleged that the insured improperly solicited and hired the plaintiff's employees. *Id.* The insured urged this court to construe the

pleadings liberally to find allegations of disparagement. *Id.* at 664. Interpreting Louisiana law, we rejected this claim. *Id.* We noted that because Louisiana is a fact-pleading jurisdiction, in order for coverage to exist, the complaint would need to allege the elements of a disparagement claim. *Id.* The complaint failed to satisfy this requirement, and we therefore concluded that the insured was not entitled to coverage. *Id.* at 665.

Here, the relevant language in the complaint is nearly identical to that in *Lamar*. Consequently, the complaint is similarly devoid of any allegations of disparagement. The Gum Tree Defendants have attempted to distinguish this case by noting that Louisiana is a fact-pleading jurisdiction. This does not affect our analysis. Regardless of whether fact or notice pleading is the standard, Lexington has not alleged that the Gum Tree Defendants disparaged its business, under either dictionary definition of disparagement presented by the parties. The Gum Tree Defendants suggest that the complaint alleges that by soliciting Lexington's customers, they necessarily harmed Lexington's reputation. What the complaint asserted is that the Gum Tree Defendants induced customers to leave Lexington. It never claimed that the inducement resulted from disparagement, as opposed to other strategies such as price cuts, personal service, or any other aspects of the services offered by the inducer.

To allege a personal injury under the language of the policy, the complaint must allege that the Gum Tree Defendants published material that disparaged a person or organization. The complaint did not do so.

B. Invasion of Privacy

The district court also held that there were no allegations in the complaint that Lexington was injured by oral or written publication of material that violated its right of privacy. Although the policies contain slightly different language, they generally provide coverage for personal injuries

resulting from "oral or written publication, in any manner, of material that violates a *person's* right of privacy." Other policies provide coverage for oral or written publication of material that violates an "individual's" right of privacy.

The Gum Tree Defendants claim that the underlying complaint alleges that they infringed upon Lexington's right of privacy by acquiring its confidential information without permission. The district court rejected this argument on the grounds that the right of privacy does not extend to entities like Lexington. The court noted that although the policy does not define "person," the phrase "persons or organizations" is used in other provisions, and the policies differentiate between an individual and a business. Thus, the provisions providing coverage for offenses that violate a person's right of privacy cannot apply in this case because Lexington is a business, not a person.

The Gum Tree Defendants argue that because "person" is not defined in the policies, there is, at the very least, some ambiguity as to this question, which requires the provision to be construed in favor of the insured under Mississippi law. The Gum Tree Defendants have not cited any law suggesting that the right to privacy applies to an entity like Lexington. Further, Nationwide has correctly noted that Kentucky does not provide a cause of action for invasion of a business's right to privacy. Finally, it is suggestive that the policies omit the word "organizations" in the provisions addressing invasion of privacy, while including it in other provisions.

The district court correctly concluded that the allegations do not amount to an invasion of privacy.

*III. Advertising Injury*

The Gum Tree Defendants further assert that the district court erred in holding that they failed to establish that an advertising injury was alleged in the complaint. The district court reasoned that the Gum Tree Defendants'

argument failed for four reasons: (1) the alleged offenses were not committed in the course of advertising, (2) the allegations do not constitute an "offense" under the policies, (3) coverage is precluded by the "Knowing Violation of Rights of Another" and "Breach of Contract" exclusions, and (4) there is no causal connection between the alleged conduct and injury. An analysis of each of these reasons is unnecessary. We agree with the district court that the lack of a causal connection between any "advertising" and the alleged "advertising injury" is alone enough to preclude coverage.

Mississippi law requires a causal connection between any advertising and an alleged advertising injury. *Delta Pride*, 697 So. 2d at 404. The Mississippi Supreme Court concluded that this "majority rule . . . best articulates the insured's objectively reasonable expectations about the scope of coverage" and "is partly a matter of interpretation and partly a matter of common sense." *Id.* The court went on to explain, "Virtually every business that sells a product or service advertises . . . . If no causal relationship were required between advertising activities and advertising injuries, then advertising injury coverage, alone, would encompass most claims related to the insured's business." *Id.* at 404–05 (internal quotation marks omitted).

This court, in interpreting the same requirement under Louisiana law, has noted that there is an insufficient causal connection if the same claim could have been asserted regardless of any advertising. *Delta Computer Corp. v. Frank*, 196 F.3d 589, 591 (5th Cir. 1999). Here, the alleged injury resulted from the alleged misappropriation of trade secrets. Regardless of whether the trade secrets were used to advertise, Lexington still could have brought the same claim.

The Gum Tree Defendants are not entitled to coverage for an advertising injury.

No. 14-60302

*IV. Claims Against Bost and the Nowell Agency*

On the same day that the district court granted summary judgment in favor of Nationwide, it also issued a separate opinion granting summary judgment for Bost and the Nowell Agency. The court concluded that because there was no coverage, Bost and the Nowell Agency could not have violated either the fiduciary duty to procure coverage or the implied covenant of good faith and fair dealing. The Gum Tree Defendants appeal this ruling but have not meaningfully briefed the argument. Accordingly, review of that judgment is waived. *See Willis v. Cleo Corp.*, 749 F.3d 314, 319 (5th Cir. 2014).

AFFIRMED.