**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 7, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-31075

LAMAR ADVERTISING COMPANY,

Plaintiff-Appellant,

versus

CONTINENTAL CASUALTY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana

Before DeMOSS, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The plaintiff-appellee, Lamar Advertising Company ("Lamar"), appeals from the grant of summary judgment in favor of Continental Casualty Company ("Continental"), the defendant-appellee, and the final judgment and order dismissing its claims against Continental.

The dispute arises after Continental, an Illinois-based insurance carrier, refused to indemnify and reimburse Lamar, a Louisiana-based advertising company, for litigation expenses and other costs Lamar suffered as a litigant in a California civil suit against RAL Construction & Maintenance, Inc. ("RAL"). RAL, the plaintiff in the California suit, was a California corporation that alleged in its

pleadings, <u>inter alia</u>, that Lamar was liable for breach of contract because it failed to honor the terms of an agreement between it and two of Lamar's predecessors in interest. The California suit ultimately settled and resulted in Lamar incurring over $1.8 million dollars in defense costs and settlement payments. When Lamar sought coverage from its insurer, Continental, for the losses it incurred from the settlement agreement of the California suit, Continental refused to cover those losses on the basis that the injuries Lamar allegedly caused to RAL, as stated in RAL's second amended complaint, were not covered under Continental's policy. Lamar filed the instant suit against Continental seeking to obtain coverage. In refusing to extend coverage to Lamar, Continental looked to the language under RAL's second amended complaint, in the California suit, to determine whether Lamar was covered under Continental's policy ("the policy"). Continental's policy will cover Lamar only if Lamar causes property damage or bodily injury through negligent conduct, but will not provide coverage if Lamar causes damages by breaching a contractual obligation. The district court in this action subsequently analyzed the same language examined by Continental in RAL's second amended complaint. The court compared the language in the complaint with the language under the policy, and granted the motion for summary judgment in favor of Continental. The court reasoned that the allegations pleaded in RAL's complaint only suggest a claim for breach of contract. Because the pleadings did not demonstrate that Lamar had engaged in negligent conduct, the court concluded that Lamar's losses were not covered under the policy. In its final judgment and order, the district court dismissed Lamar's claims on the basis that the allegations pleaded in RAL's second amended complaint, contrary to Lamar's contentions, did not indicate facts sufficient to trigger Continental's coverage under its policy.

On appeal, Lamar argues that the district court erred in granting summary judgment in favor of Continental because (1) RAL alleged facts in its second amended complaint sufficient to demonstrate that RAL suffered property damage and personal injury as defined under the policy; and (2) there exists genuine issues of fact regarding Continental's obligation to indemnify Lamar, sufficient to preclude the district court's grant of the motion for summary judgment.

For the reasons herein, the district court's motion for summary judgment in favor of Continental and the final judgment and order dismissing Lamar's claims are AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

Lamar provides advertising displays throughout the United States on, among other things, municipal billboards, buses, bus shelters, and benches. Sometime in 1999, Continental issued a comprehensive general liability policy ("the policy") to Lamar. The policy afforded Lamar occurrence coverage for the period of January 1, 1999 through January 1, 2002. Under the terms of the policy, Continental agreed "to pay those sums that the insured becomes legally obligated to pay as damages [because of] property damage [or] personal injury to which this insurance applies (emphasis supplied)."

In reliance on the above language, Lamar sought coverage under the policy after becoming embroiled in a lawsuit before the United States District Court for the Southern District of California. The suit occurred shortly after Lamar, in the process of expanding its advertising business, acquired two other companies, Triumph Outdoor Holdings, L.L.C. ("Triumph"), and Transit America Las Vegas, L.L.C. ("Transit"). Lamar was named as one of the defendants, along with its predecessors in interest, Triumph and Transit, in a suit styled RAL Construction v. Lamar Advertising Co., et al.,

3

("California litigation" or "California suit"). The California litigation ultimately settled and resulted in Lamar's losses.

According to the district court, the California suit arose as a result of a contract dispute between RAL and Lamar's predecessors in interest. The record indicates that as Triumph and Transit's successors in interest, Lamar assumed all obligations owed to RAL under a contract agreement entitled the Transit Shelter Maintenance and Construction Agreement ("the agreement"). RAL entered the agreement with Triumph and Transit to be the exclusive provider of maintenance and construction services to bus shelters owned or leased by Triumph and Transit. The agreement was to last for no less than ten years. RAL alleged Lamar breached the agreement by entering into new municipal contracts without using RAL's services and by ceasing to use RAL's services on existing contracts, after its acquisition of Triumph and Transit.

RAL's original complaint only sought damages for breach of contract; it did not assert any claims for tort liability. RAL filed a first amended complaint, but only named additional defendants; the substantive assertions merely re-alleged the breach of contract claim.[1] Less than a year after filing the original complaint, RAL filed a second amended complaint. That complaint reasserted the breach of contract claim and included the following other claims: (1) interference with contractual relations, (2) intentional interference with prospective economic advantage, and (3) negligent interference with prospective advantage (collectively RAL's "three tort claims"). The three tort claims all appear to

---

[1] RAL sought to hold the original owners, Triumph and Transit, liable, as well as the successors in interest, Lamar Advertising and Lamar Outdoor, Inc., and thus, added them as defendants in its first amended complaint. The substantive allegations were essentially identical to those in the original complaint.

4

have been alternatives to the breach of contract claim.[2] RAL's three tort claims are the essence of Lamar's suit against Continental seeking coverage from Continental's policy.

Through letters dated August 16, 2000 and February 1, 2001, Lamar notified Continental of the California litigation and provided the insurance carrier with copies of the original and amended complaints. Based on the language in the complaints, Continental denied Lamar's claims for defense and indemnification under the policy. In response, Lamar filed a declaratory action against Continental in a Louisiana state court, requesting a declaration of Continental's coverage liability, as well as reimbursement for the defense costs and settlement payments that resulted from the California litigation. Continental removed the suit to the United States District Court for the Middle District of Louisiana on the basis of diversity. Lamar filed a motion for partial summary judgment seeking a ruling that Continental owed a duty to provide Lamar a defense in the California litigation. Continental filed a cross-motion for summary judgment contending it had no duty to defend or indemnify Lamar in the California litigation. Citing specific provisions under the policy, Coverage A and Coverage B, Lamar argued in its motion for summary judgment that there existed allegations of property damage and/or personal injury in RAL's second amended complaint sufficient to trigger Continental's duty to defend Lamar. Lamar further argued that under the terms of the policy, Continental was obligated to indemnify Lamar for the defense and settlement costs it incurred from the California litigation.

---

[2] Since an insurer is not obligated under a general insurance contract to defend or indemnify its insured for a breach of contract claim, the entire foundation of Lamar's contention that the policy was triggered by allegations in the pleadings is predicated on our finding that RAL asserted a valid tort claim in its pleadings, specifically as it relates to the policy's coverage of personal injury and property damage.

Under Coverage A of the policy, Continental agrees "to pay those sums that the insured becomes legally obligated to pay as damages of 'bodily injury' or 'property damage' . . . ."[3]  Under Coverage B, Continental agrees "to pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . ."[4]

Lamar argued in its motion that the pleadings under RAL's three tort claims alleged facts sufficient to trigger coverage under the policy.[5]  Lamar argued that RAL's pleadings asserted in RAL's interference with contractual relations claim alleged that Lamar knew of RAL's prior contractual relationship with Triumph and Transit, but nevertheless interfered with that relationship by persuading Triumph and Transit to terminate its relationship with RAL.  Lamar contends that these allegations clearly demonstrate a tort claim for interference with contractual relations, sufficient to trigger the policy's coverage. Lamar additionally argued that RAL asserted allegations demonstrating

---

[3] Under the policy, property damage is defined in pertinent part in two ways:  (1) "Physical injury to tangible property, including all resulting loss of use of that property. . ."; and (2) [l]oss of use of tangible property that is not physically injured."

[4] Under the policy, personal injury is defined in pertinent parts as follows:

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

\* \* \* \* \*

        d. Oral or written publication of material that slanders or libels a
        person or organization or disparages a person's or organization's
        goods, products, or services . . . .

[5] With respect to the interference with contractual relations and the intentional interference with prospective advantage claims, the district court found, and we agree, that RAL essentially asserted the same allegations under both these claims, but merely assigned them different names. Accordingly, when we refer to the interference with contractual relations claim, we simultaneously refer to the intentional interference with prospective advantage claim.

6

that Lamar was liable under the interference with contractual relations claim because the pleadings asserted allegations to indicate that Lamar improperly solicited and hired RAL's employee and thereby caused RAL consequential loss of money and employees. As to the negligent interference with prospective advantage claim, Lamar argued that RAL's pleadings asserted allegations to indicate that Lamar negligently caused the termination of RAL's relationship with Triumph and Transit based on the allegations in the pleadings that stated that Lamar improperly solicited and hired RAL's employees by using defaming or disparging words to influence the employees to believe that employment with RAL would be unfavorable.

Lamar essentially argued to the district court, and now before this court, that if the allegations in RAL's second amended complaint are accepted as true, this court must conclude that RAL's loss of employees and consequential loss of money constitutes damage of property, as defined under the policy, and thereby, it was covered under the policy's provision addressing Coverage A, bodily injury or property damage liability.

Alternatively, Lamar argues that the allegations in the pleadings asserting the <u>negligent interference with prospective advantage</u> claim was covered under the policy's provision addressing <u>Coverage B</u>, personal injury liability by oral or written publication. Lamar argues that the pleadings indicate a negligence claim based on the allegations that Lamar disparged and or defamed RAL orally or in writing, in Lamar's effort to induce Triumph and/or Transit to terminate their prior contractual relationship with RAL. Lamar suggests that it can be presumed from the interference with prospective advantage pleading that Lamar used oral or written language, unfavorable to RAL, in order to induce RAL's employee's away from RAL and over to Lamar. The logic here is that Lamar's use of the unfavorable language rose to a level constituting the tortious conduct of

7

defamation or disparagement, either of which is sufficient to trigger the policy's coverage under Coverage B.

The district court considered the parties' motions for summary judgment, applied Louisiana law, and subsequently denied Lamar's motion and granted Continental's motion. This appeal by Lamar ensued.

**STANDARD OF REVIEW**

This Court reviews the grant of a motion for summary judgment de novo, applying the same legal standards as the district court applied to determine whether summary judgment was appropriate. Flock v. Scripto-Tokai Corp., 319 F.3d 231, 236 (5th Cir. 2003) (citing Ramirez v. City of San Antonio, 312 F.3d 178, 181 (5th Cir. 2002)). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"In a diversity case such as this one, federal courts must apply the choice of law rules in the forum state in which the court sits." American Intern. Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). The parties agree, and Louisiana choice of law rules dictate, that in this action involving the interpretation of an insurance policy issued in Louisiana, Louisiana substantive law governs this Court's decision. See id. (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)). Under Louisiana law "an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code." American Intern. Specialty Lines Ins. Co., 352 F.3d at 262 (5th Cir. 2003) (citing Carbon v. Allstate Ins. Co., 719 So. 2d 437, 439 (La.

8

1998); <u>Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.</u>, 630 So. 2d 759, 763 (La. 1994); William S. McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, Insurance Law & Practice § 4 (2d ed.1996)). "'A court's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.'" <u>Id.</u> (citation omitted); LA. CIV. CODE ANN. art. 2045. The "[w]ords of a contract must be given their generally prevailing meaning, LA. CIV. CODE art. 2047, and when the contractual language is "clear and explicit and leads to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046.

## DISCUSSION

### I.    Duty to Defend and Indemnify

####    A.    Governing principles of law

Under Louisiana law, an insurer's duty to defend suits brought against an insured "is broader than [its] duty to indemnify" the insured. <u>Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.</u>, 954 F.2d 1075, 1077 (5th Cir.1992) (citing <u>Jensen v. Snellings</u>, 841 F.2d 600, 612 (5th Cir.1988)). Whether an insurer has a duty to defend is determined solely by "compar[ing] the allegations in the complaint against the insured with the terms of the policy" at issue -- the so-called "eight corners" rule. <u>Id.</u> (citing <u>Jenson</u>, 841 F.2d at 612); <u>Continental Cas. Co. v. Smith</u>, 243 F. Supp. 2d 576, 580 (E.D. La. 2003) (applying Louisiana law). If "there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded," the insurer must defend the insured. <u>Complaint of Stone Petroleum Corp.</u>, 961 F.2d 90, 91 (5th Cir. 1992). Accordingly, "[a]ssuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff." <u>Hardy v. Hartford Ins. Co.</u>, 236 F.3d 287, 291 (5th Cir. 2001). In making

9

this determination, this Court must liberally interpret the complaint.  Complaint of Stone Petroleum

Corp., 961 F.2d at 91.

        B.      Duty Under Coverage A

Most of the salient facts in this dispute are uncontested.  Both parties agree that the only loss

alleged in RAL's second amended complaint is for loss of future economic benefits, specifically

regarding RAL's alleged loss of employees and the future economic losses that may have resulted

therefrom.  Essentially, Lamar argues that RAL's employees should be considered as property for

purposes of the insuring agreement.  Under the language of the policy governing Coverage A, there

can be no coverage for consequential economic damages – without the existence of a physical injury

to property.  Accordingly, Lamar's contention that the allegations in RAL's pleadings rose to a level

sufficient to constitute a tort claim for interference with contractual relations, is predicated on

Lamar's assertion that employees are property.  Because we flatly reject the remarkable notion that

people are property, this argument is to no avail.  Further, Lamar has cited no controlling case

authority for this proposition; it merely points to four cases it contends are analogous to the facts

pleaded in the second amended complaint.[6]  We find three of these cases inapposite, and the fourth

case inapplicable on other grounds.

In Borden, for example, the plaintiff's equipment, a compressor, was physically damaged

while en route to a facility for routine maintenance after the transport company's driver negligently

wrecked the truck the equipment was aboard. 454 So. 2d at 1082-83.  The effect was that the plaintiff

---

[6] Borden, Inc. v. Howard Trucking Co., Inc., 454 So. 2d 1081 (La. 1983); Nelson v. Want
Ads of Shreveport, Inc., 720 So. 2d 1280 (La. App. 2 Cir. 1998); Dietrich v. Travelers Ins. Co., 551
So. 2d 64 (La. App. 1 Cir. 1989); and Williamson v. Historic Hurstville Assoc., 556 So. 2d 103 (La.
App. 4 Cir. 1990).

lost a piece of equipment vital to its daily operation and the consequential damages resulting from delay of those operations because of that loss. Id. Borden fails, however, to advance Lamar beyond even the threshold inquiry of whether employees can ever be constituted as property. A compressor is not a person; it is equipment.

In Nelson, the relevant pleadings asserted allegations that the plaintiff suffered loss of his coupons, i.e., tangible property, after the defendant, the plaintiff's business partner, allegedly sold the plaintiff's coupons for the defendant's own use, without the plaintiff's permission. 720 So. 2d at 1280. The court found that the coupons were tangible property and that the plaintiff had alleged facts sufficient to raise a claim for misappropriation or conversion, sufficient to trigger coverage under the policy's definition of property. Id. at 1282-83. Again, this case does nothing to get Lamar over the initial hurdle of our conclusion that people are not property.

Lamar's stronger arguments rely on Dietrich and Williamson, as these cases distinguish between tangible and intangible property. The Louisiana Supreme Court has equated the term "tangible property" with "corporeal property." City of New Orleans v. Baumer Foods, Inc., 532 So. 2d 1381 (La. 1988) (interpreting city tax on "tangible personal property"); St. John the Baptist Parish School Board v. Marbury-Pattillo Construction Co., 254 So. 2d 607, 612 (La. 1971) (concluding that "tangible personal property" is synonymous with corporeal movables as defined in the Louisiana Civil Code). Louisiana Civil Code article 461 provides that "[c]orporeals are things that have a body, whether animate or inanimate, and can be felt or touched." Incorporeals, by contrast, "are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servitudes, obligations, and right of intellectual property." LA. CIV. CODE art. 461.

11

Lamar relies on Dietrich for two propositions. Lamar first relies on Dietrich for the proposition that Louisiana courts recognize a broad interpretation of the term property. In Dietrich, an employer failed to enroll its employee in a health and disability plan. 551 So. 2d at 65-66. The employer's failure caused the employee's loss of promised health and disability benefits. Id. When the employee sued the employer for breach of contract, the employer impleaded its insurer as a third-party defendant. Id. The insurer refused coverage of the employer under its policy contending that the loss of the employee's benefits was an intangible property right, and therefore, not within its policy's definition of property. Id. The employer conversely argued that the employee's lost benefit was a tangible property right and therefore within the scope of the policy's definition of property. Id. The court considered the matter and distinguished the right to benefits from the actual benefits, i.e., the money the employee would have been entitled had her employer properly enrolled her. Id. The court concluded that–the right–to the benefit was intangible property, but that the actual benefit was tangible property. The court reasoned that the employee's actual damage was the loss of the tangible property, not the intangible property. After reaching this conclusion, the court remanded the case to the trial court to determine whether the employee's loss was caused by breach of contract or delictual obligation, or by some tortious conduct as defined under the policy. Id. at 66-67.

Lamar's argument that Dietrich is analogous to the facts in this case, as it relates to the notion that employees are property, asserts that RAL's actual loss of its employees, tangible property, is akin to the loss of actual benefits suffered by the Dietrich employee. Again, Lamar misses the mark. Lamar's reliance on Dietrich is unpersuasive.

12

Lamar next relies on <u>Dietrich</u> for the proposition that the loss of an intangible right may result in the loss of an actual property right.[7]   Lamar asserts that the loss of the right to the benefits, suffered by the <u>Dietrich</u> employee, is akin to RAL's alleged loss of the right to use of the RAL's former employees, both intangible rights.  Lamar similarly argues, as the plaintiff in <u>Dietrich</u>, that the loss of RAL's intangible property resulted in the loss of an actual property right, here RAL's future economic benefits it would have gained, i.e., money, but for the loss of its employee caused by Lamar's tortious interference.  Still, Lamar has not persuaded us that an employer's contractual right to use of an employee's services is a property right proper, and an intangible property right in particular.  Without bridging this gap, the analogy to <u>Dietrich</u> simply does not suffice.  Moreover, this court has previously rejected the notion that, under Louisiana law, the loss of possible future income or profits, or the loss of use of that income, constitutes a loss of <u>tangible</u> property.  <u>See</u> <u>Selective Ins. Co. of Southeast v. J.B. Mouton & Sons</u>, 954 F.2d 1075, 1079-80 (5th Cir. 1992)  (stating "[w]e will not expand <u>Dietrich</u>'s holding on 'actual benefits' to every anticipated hope of future income.").  Lamar's reliance on Dietrich is therefore to no avail.

Lamar also insists that <u>Williamson</u> compels the conclusion that consequential economic losses resulting from the "loss or impairment of intangible property;" again, the right of use of RAL's former employees here, constitutes the loss of  tangible property as defined under the policy.  We do not agree.

---

[7] More specifically, the pertinent part of RAL's second amended complaint alleges that as a result of Lamar's alleged tortious interference with RAL's contract, i.e., Lamar's "raiding" of RAL employees, RAL sustained the "loss of probable future economic benefit or advantage of the [contractual] relationship" and a "threatened . . . ability to provide superior construction and maintenance services."

13

The plaintiff in <u>Wiliamson</u>, after being sued for allegedly slanderous and defamatory remarks, filed a third-party demand against her insurer. 556 So. 2d at 104. The plaintiff contended that the insurer was obligated to defend and indemnify her because the suit against her alleged in its pleadings facts sufficient to indicate that she caused bodily or physical injury and/or property damage, as defined under the insurer's policy. The alleged injuries included, loss of reputation, damage to standing, and loss of business and consequential revenues, all intangible rights. Lamar insists that <u>Wiliamson</u> compels the conclusion that loss of tangible property, within the meaning of a liability policy, includes consequential economic losses resulting from the "loss or impairment of intangible property," including the loss of "future economic benefits" allegedly experienced by RAL.

While it is true that in <u>Williamson</u>, the Louisiana Fourth Circuit Court of Appeal held that loss of profits constitutes injury to "tangible property," <u>see</u> 556 So. 2d at 106, we find that the holding in <u>Williamson</u> does not compel us to depart from our more recent treatment of this issue in <u>Selective Insurance</u>.[8] In <u>Williamson,</u> the complaint in the underlying action alleged that the defendant's defamatory remarks about the plaintiff and his business venture caused reputational injury, i.e., intangible property, and thereby, caused him consequential loss of profits. <u>Id.</u> The Louisiana Fourth Circuit held that injury to reputation and loss of profitability constitute damages to "tangible property" within the meaning of a homeowner's policy that defined property damage as "physical injury to or

---

[8]The doctrine of panel stare decisis requires in diversity cases that this panel adhere to a prior panel's interpretation of Louisiana law --"without regard to any alleged existing confusion in [that] state['s] law" -- "in the absence of 'a subsequent state court decision or statutory amendment which makes this Court's [prior] decision clearly wrong.'" <u>American Intern. Specialty Lines Ins. Co.</u>, 352 F.3d at 271 n.4 (quoting <u>FDIC v. Abraham</u>, 137 F.3d 264, 269 (5th Cir.1998)). Because the facts presented in this case arguably are distinguishable from those presented in <u>Selective Insurance</u>, we have assumed that our holding in <u>Selective Insurance</u> regarding our interpretation of Louisiana law is not dispositive in this case.

14

destruction of tangible property including loss of its use." Id. As Continental accurately points out, however, the court in Williamson based its interpretation of the policy on a Webster's Dictionary definition of the term tangible. Id. n.2. The Williamson court considered neither the Louisiana Supreme Court's declaration that tangible property is corporeal property nor any provision of the Louisiana Civil Code in reaching this conclusion. See id. at 106. Moreover, the Williamson court's broad interpretation of the term tangible would render meaningless the provision under Continental's policy agreeing to pay only those damages caused by physical damage to tangible property. Such an interpretation would make all damages recoverable under the policy. By contrast, this court's interpretation of the terms tangible property as pronounced in Selective Insurance, is far more consonant with the language under Continental's policy and is consistent with Louisiana civil law methodology. Accordingly, we hold that loss of profits that do not flow from injury to tangible property is not a loss covered by this policy's property damage provision.

C.      Duty Under Coverage B

We also reject Lamar's contention that the allegations under RAL's negligent interference with prospective advantage claim falls within the scope of the policy's personal injury protection as defined under Coverage B. RAL's complaint made no specific allegation of any disparaging or defamatory oral or written publication by Lamar.

Lamar contends that RAL asserted a claim for disparagement against Lamar which was covered under Coverage B. Lamar points to RAL's allegation in the second amended complaint stating that Lamar "wrongfully and intentionally advised, counseled, persuaded, and otherwise induced [Lamar's predecessors-in-interest] to terminate . . . their contractual agreement with RAL." Lamar also points to language alleging that Lamar "improperly solicited and hired RAL employees." Lamar

15

argues that only "uncomplimentary solicitation" and oral or written communications would cause the damages alleged by RAL. Thus, according to Lamar, when accepted as true and liberally construed, these allegations state claims within the policy's definition of personal injury under Coverage B.[9]

Lamar's argument here fails to pass muster because the factual allegations in RAL's second amended complaint do not state a cause of action for disparagement. Although Louisiana does not recognize disparagement as an independent tort, other jurisdictions define disparagement as the "[d]efamation of the quality of goods or services," see, e.g., Lexmark Int'l Inc. v. Transportation Ins. Co., 761 N.E. 2d 1214, 1225 (Ill. App. 1st Dist. 2001), a standard that is consistent with the language under Coverage B of Continental's policy. "An action for defamation in Louisiana requires the plaintiff to plead and prove: (1) defamatory words, (2) publication, (3) falsity, (4) malice, and (5) resulting injury." Hardy v. Hartford Ins. Co., 236 F.3d 287, 291 (5th Cir. 2001) (citing Cangelosi v. Schwegmann Bros. Giant Super, 390 So. 2d 196, 198 (La. 1980)). As this court has previously recognized, Louisiana is a fact pleading jurisdiction, Hardy, 236 F.3d at 291; thus, to allege defamation of a product or services, RAL's complaint must, at a minimum, specifically allege that Lamar made a false and malicious oral or written communication about RAL's products or services that caused harm to RAL. See id. (stating that "a plaintiff pleading defamation must specifically allege the defendant made *defamatory* statements, with malice"). Lamar cites no case in support of the

_____

[9]The district court treated disparagement and defamation interchangeably, perhaps because the scope of coverage under Coverage B is the same for both causes of action. In its brief, Lamar lists "defamation" in its statement of issues but briefed only the issue of disparagement. Even assuming Lamar has waived its defamation argument, however, such waiver does not impact the analysis of Continental's duty to defend or indemnify under its personal injury provision.

16

proposition that a disparagement claim may be "gleaned" from the face of a complaint that contains

no specific reference to defamatory words, falsity, malice, or publication to a third party.

Although Louisiana case law requires a liberal interpretation of RAL's claims, courts will not

read into a complaint an allegation of defamation that has not been made.  See Hardy,  236 F.3d at

291; KLL Consultants, Inc. v. Aetna Cas. Sur. Co., 738 So. 2d 691, 696 (La. App. 5th Cir. 1999).

As Continental correctly points out, the court in KLL Consultants considered whether a plaintiff's

pleadings had sufficiently set forth facts to state a claim for defamation within Coverage B of the

defendant's liability policy.   In KLL Consultants, the complaint in the underlying action alleged that

KLL, a utility district, interfered with the plaintiff's contract to provide engineering services for the

county's water and sewer system improvements.  738 So. 2d at 696.  Specifically, the plaintiff alleged

that KLL negotiated with the county to secure a contract for engineering services despite its

knowledge that the plaintiff already had been awarded the contract.  Id.  In his complaint, the plaintiff

asserted that "KLL knowingly stole the contract executed with [plaintiff] to obtain [plaintiff's

engineering business], and further that "KLL interfered with [plaintiff's] pro spective business

advantage without justification."  Id.  The Louisiana Fifth Circuit Court of Appeal found that the

complaint contained no allegation of slander, libel, disparagement, or other personal injury. Id. In the

absence of factual allegations in the pleading sufficient to state a cause of action for defamation, the

Louisiana Fifth Circuit declined to read a defamation claim into the complaint, and thus held that the

policy's personal injury coverage did not cover the underlying action.  Id.

Similarly, in Hardy, this court likewise held that the insurer had neither the duty to defend nor

to indemnify an insured under its personal injury liability coverage where a defendant's reconventional

demand (counterclaim) in the underlying action had "not made even a rudimentary claim for

defamation," nor any other personal injury, against the insured. 236 F.3d at 291. In Hardy, the reconventional demand in the underlying action asserted claims for breach of contract, breach of fiduciary duty, and fraud, and claimed that the defendant had suffered, among other things, reputational damage as a result of these alleged offenses. Id. This court found that even "under the most liberal reading of [the defendant's] reconventional demand," the pleading contained no allegation that the plaintiff had defamed or disparaged the defendant, nor did it contain any allegation of malice. Id. at 292. Accordingly, this court declined to read a disparagement or defamation claim into the relevant pleadings and thereby concluded that the personal injury coverage of the policy did not cover the underlying action. Id. at 290-91, 292 (stating that while ambiguous insuring provisions must be "construed in favor of finding coverage, this rule of strict construction 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists'" (quoting Ledbetter v. Concord Gen. Corp., 665 So. 2d 1166, 1169 (La. 1996)).

In the instant action, as in KLL Consultants and Hardy, the relevant pleadings contain no allegation – let alone a specific allegation – of disparagement or defamation of RAL's products or services, falsity, malice, or publication to a third person. Accordingly, we find that on a plain reading of the policy's terms, Coverage B's definition of "personal injury" does not encompass RAL's claims for breach of contract, tortious interference with a contract, or wrongful solicitation and hiring of RAL's workforce, even under the most liberal construction of RAL's pleadings.

II.    Genuine Issue of Material Fact

Lamar also contends that there exist genuine issues of material fact concerning Continental's obligation to indemnify it which preclude the district court's grant of the motion for summary judgment. In support of this position, Lamar contends that the district court failed to consider certain

excerpts of deposition testimony proffered by Lamar which, according to Lamar, "at a minimum" create a genuine factual dispute about whether "RAL was actually disparaged, or its employees were actually raided, . . . and whether these actions . . . caused property damage and/or personal injury."[10] Continental counters that because an insurer's duty to defend is broader than its duty to indemnify, the district court's ruling that it owed no duty to defend Lamar is dispositive of Lamar's indemnification claim. Continental further contends that the deposition excerpts do nothing to advance Lamar's claim that the policy covered Lamar's conduct as pleaded in the second amended complaint. Albeit for slightly different reasons, we agree with Continental.

The crux of Lamar's argument is that the proffered deposition testimony demonstrates that Lamar actually defamed and/or disparaged RAL. Thus, according to Lamar, its "acts" are covered by the policy. Even assuming that consideration of extrinsic evidence to determine coverage liability is proper in the absence of an ambiguity in the policy's terms,[11] these excerpts do not support Lamar's argument. As Continental correctly points out, Lamar has not identified the relationships of each deponent to the parties in this litigation. Moreover, it is impossible to discern whether some of them were RAL employees, Lamar employees, or unrelated to those companies. Further, the deposition testimony essentially reveals only that some Lamar employees may have stated that they "didn't like" RAL. These facts do not support a cause of action for disparagement or defamation (see supra at 13-

---

[10]Lamar also argues that Continental has the burden of proving the policy excluded intentional acts. In this case, however, the district court did not base its holding on any policy exclusion; rather, the district court ruled that Continental's policy afforded no coverage based on an interpretation of the policy's *insuring* provisions. Lamar, as the insured, bears the burden of proving coverage.

[11]See Doerr v. Mobil Oil Corp., 774 So. 2d 119, 124, 2000-0947 (La. 2000) (stating that where a term in an insurance contract is ambiguous, courts may resort to extrinsic evidence to determine the parties' intent; however, where a particular reading of a contract gives effect to all the provisions and does not lead to "absurd consequences," the contract "will be enforced as written").

19

14), nor any other cause of action covered under Coverage A, or under Coverage B of the policy. Lamar's contention that there exists a genuine issue of material fact as to Continental's obligation to indemnify it is therefore without merit . We, accordingly, affirm the district court's grant of the summary judgment motion in favor of Continental.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment and final judgment in favor Continental, dismissing Lamar's complaint, are hereby AFFIRMED.

AFFIRMED.