# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2015

Lyle W. Cayce
Clerk

No. 13-31313

ANCO INSULATIONS, INCORPORATED, a Louisiana Corporation,

      Plaintiff - Appellant

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA,

      Defendant - Cross Defendant - Appellee

ROYAL INDEMNITY COMPANY, a Delaware Corporation; ZURICH
AMERICAN INSURANCE COMPANY; AMERICAN GUARANTEE;
LIABILITY INSURANCE COMPANY,

      Cross Claimants - Appellants

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-657

---

Before DAVIS, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:*

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31313

In this insurance coverage dispute, the district court granted a motion for partial summary judgment to Defendant-Appellee National Union Fire Company of Pittsburgh, Pennsylvania ("National Union"). The court reasoned that, because Plaintiff-Appellant Anco Insulations, Incorporated ("Anco") had failed to tender claims timely under the terms of its insurance policy, National Union was not obligated to reimburse Anco for any legal costs that it incurred in defending the untimely tendered lawsuits. The district court also granted National Union's motion for partial summary judgment on Anco's claim for statutory penalties under La.R.S. §§ 22:1973, 22:1892. We affirm.

## I.    FACTS & PROCEEDINGS

### A.    Factual background

From approximately 1972 through the early 1980s, Anco sold, installed, repaired, and distributed insulation materials that contained asbestos. As a result, Anco was named a defendant in approximately 2,700 asbestos-related lawsuits filed in Louisiana, Texas, and Mississippi. In 1987, National Union issued a primary general liability insurance policy to Anco ("the Policy"), for the policy period January 1, 1987 to January 1, 1988. The Policy did not contain an asbestos exclusion.

The following factual background is contested; we summarize it only to provide the context of Anco's claim that the district court erred in granting National Union's motions for partial summary judgment. We begin with Anco's allegation that, at "some point" during the late 1980s, National Union told Anco's corporate representative, Mr. Bourgeois, that Anco had no asbestos coverage. In March of 2000, Robert Kuehn, a manager at the AIG Toxic Tort Claims department,[1] requested permission from Anco's counsel, Thomas Balhoff, to visit Zurich's offices and review its files on Anco's asbestos claims.

---

[1] National Union is a member company of AIG.

2

No. 13-31313

Mr. Balhoff granted permission on behalf of Anco. In that same year, Anco tendered two asbestos lawsuits to National Union for defense by the insurer, as evidenced by the insurer's two letters acknowledging the claims. The claims were tendered under other policies, however, not under the Policy.[2]

In August 2000, Mr. Spadacenta, a National Union representative, allegedly advised Mr. Nilson, a Zurich claims handler, that Anco had not reported the asbestos bodily injury claims under its primary policies.[3] In January 2001, Anco's counsel wrote to Greg Mayer of AIG Toxic Tort Claims, a part of National Union Insurance Company, advising National Union of the pending asbestos litigation and putting National Union on notice that it had issued excess coverage to Anco under a different policy.

## B.   District court proceedings

In September 2007, Anco filed a complaint seeking a declaratory judgment against several of its excess liability insurers. National Union was not named as a defendant in that initial complaint. During the course of discovery, Anco became aware of the existence of the Policy and of the fact that it did not contain an asbestos exclusion. On April 23, 2009, Anco forwarded all suits to National Union that had been served on Anco and tendered them to National Union under the Policy. In May 2009, Anco added National Union as a party-defendant to its pending declaratory judgment action against its excess insurers. In January 2010, Anco began forwarding all lawsuits that were or had been served on it to National Union. In February 2010, Anco filed its third amended complaint to add a claim against National Union for statutory

---

[2] Per National Union's internal operating procedure, the insured is required to specify the policy under which it is seeking coverage when tendering a claim, otherwise it is "kicked-back."

[3] Mr. Spadacenta denied knowledge of having had this conversation with Mr. Nilson. He claimed that the letter must have referred to the two policies that were noticed to National Union in the *Mason* and *Valdes* lawsuits, both of which contained asbestos exclusions.

No. 13-31313

penalties under La.R.S. §§ 22:1892, 22:1973, asserting that National Union had failed to participate timely in Anco's defense of the underlying lawsuits.

In December 2011, National Union filed a motion for partial summary judgment, contending that it was not liable for any of Anco's defense costs in the underlying asbestos lawsuits; or, alternatively, that National Union was not obligated to reimburse Anco or any of its other primary insurers for legal fees or costs incurred prior to April 23, 2009 – the date on which Anco first forwarded its asbestos lawsuits to National Union. Several months later, in April 2012, National Union filed a motion for partial summary judgment on Anco's claim for statutory penalties, asserting that (1) National Union had assumed its share of defense costs following Anco's tender of the lawsuits in 2009; and (2) Anco had not suffered any loss that would entitle it to statutory penalties.

In February 2013, the district court granted National Union's first-filed motion for partial summary judgment, concluding that the record established that Anco first tendered its claims under the Policy on April 23, 2009. Relying on that date as the first tender of claims, the court ruled that Anco's failure to tender defense of the lawsuits to National Union timely constituted a breach of the Policy's requirement that Anco "immediately" forward any lawsuits to National Union. The district court therefore held that National Union was not obligated to reimburse Anco for any legal fees and costs it incurred in or after 1987 in the defense of approximately 2,700 asbestos lawsuits filed between 1987 and 2008.

The district court also granted National Union's motion for partial summary judgment on Anco's request for statutory penalties. The court reasoned that, as Anco had not shown that it suffered any loss from National Union's failure to participate in the defense, it could not recover penalties

4

No. 13-31313

under Section 22:1892 for the lawsuits filed *after* April 23, 2009.[4]  The court also ruled in favor of National Union on Anco's request for statutory penalties under Section 22:1973(A), concluding that National Union's alleged failure to participate in Anco's defense is not one of the six enumerated claims-settlement practices that would constitute a violation of that statute.

Anco, along with Cross-Claimants-Appellants Royal Indemnity Company, Zurich American Insurance Company, and American Guarantee & Liability Insurance Company, timely appealed both rulings.[5]  On appeal, Anco contends that the district court erred (1) in holding that National Union is not obligated to reimburse Anco for costs it incurred in defending lawsuits filed between 1987 and 2008, because, Anco insists, a genuine dispute of material fact exists as to the date that Anco first tendered the claims; and, (2) in denying Anco's request for Section 22:1892 penalties because, according to Anco, that statute does not require it to show that it sustained losses to recover such penalties.

## II.    ANALYSIS

### A.    Standard of review

We review a district court's summary judgment *de novo*, applying the same standards as the district court.  We apply state substantive law when we interpret an insurance policy, and we review the district court's conclusions on state law *de novo*.[6]  Under Louisiana law, an insurance policy is a contract that must be construed using the general rules of contract interpretation set forth in the Civil Code; the court's role is to determine the common intent of the

---

[4] The district court dismissed as moot Anco's claim for statutory penalties relating to lawsuits filed before April 23, 2009, because Anco had breached the Policy by failing to tender those lawsuits timely to National Union.

[5] Cross-Claimant-Appellant Royal Indemnity does not join Anco's appeal of the district court's ruling on Anco's bad faith claims.

[6] *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 659 (5th Cir. 2005).

parties.[7] An insurance policy may limit an insurer's liability and impose and enforce a reasonable condition on the policy obligations that the insurer contractually assumes unless doing so conflicts with state law or public policy.[8] When interpreting Louisiana law, we are bound by this court's prior interpretation, so long as it has not been superseded by Louisiana case law or statute.[9]

## B.    Partial summary judgment on duty to reimburse Anco for legal fees and costs

As noted, National Union filed a motion for partial summary judgment that it was not obligated to assume any of Anco's defense costs in the underlying asbestos lawsuits; or, alternatively, that it was not obligated to reimburse Anco or its other primary insurers for any legal fees or costs incurred prior to April 23, 2009 – the date on which Anco first forwarded its asbestos lawsuits to National Union.   The district court granted National Union's motion, and Anco appeals that summary judgment on the following grounds: (1) A genuine dispute of material fact exists as to the date that Anco first tendered claims under the Policy; (2) even if Anco's tender of the claims was untimely, the district court erred in not excusing Anco's tardiness; and, (3) the court erred in concluding that Anco's failure to tender claims timely under the terms of the Policy relieved National Union of its defense obligations because National Union did not claim that it was prejudiced by Anco's late tender.

---

[7] *Cadwallader v. Allsate Ins. Co.*, 848 So.2d 577, 580 (La. 2003).

[8] *Henry v. S. La. Sugars Coop., Inc.*, 957 So.2d 1275, 1277 (La. 2007) (internal quotation marks omitted).

[9] *Lamar*, 396 F.3d at 663 n.8.

### 1.    Anco's April 23, 2009 tender of the underlying lawsuits

The district court found that Anco first tendered the underlying lawsuits to National Union on April 23, 2009 – a finding supported by Anco's responses to interrogatories.[10]   Anco disputes this determination, claiming that the district court improperly weighed the evidence and made credibility determinations.

Anco asserts that the following evidence creates a genuine dispute of material fact as to the date that Anco first tendered the underlying claims to National Union:  (1) the testimony of Anco's corporate representative, Mr. Bourgeois, that Anco's corporate practice was to forward all lawsuits to National Union; (2) the reference to prior asbestos "claims" in a letter dated August 2000, from Mr. Spadacenta, a claims adjuster for National Union, acknowledging a tender of an asbestos claim; (3) Mr. Spadacenta's letter dated May 2000, acknowledging an asbestos-claim lawsuit that referred to "various policies" and his letter dated August 2000 referring to the "above policies;" (4) AIG Representative Robert Kuehn's letter dated March 2000 requesting permission to review Zurich's files on Anco's asbestos claims, constituting evidence that National Union had received tenders of asbestos lawsuits; and, (5) Anco's counsel's letter dated September 2000, apprising the AIG Toxic Tort Claims Unit of the asbestos cases pending against Anco, as well as two follow-up letters respectively dated January 24 and 25, 2001.

We are satisfied that the district court did not err in rejecting this evidence.  First, although Mr. Bourgeois testified that it was Anco's "practice" to forward lawsuits to National Union as they were received, this testimony,

---

[10] Anco stated that it had provided National Union with two DVDs containing approximately 2700 asbestos-related petitions on April 23, 2009 ("In April of 2009, copies of all suits that have been served upon Anco as of that point in time were provided to counsel for National Union on 2 DVDs").

without any supporting documents or corroboration, is not sufficient to create a genuine dispute of material fact.  Second, evidence that Mr. Spadacenta referred to prior asbestos "claims" in his letter acknowledging Anco's tender of an asbestos suit, or reference to "various policies" in another letter acknowledging the tender of an asbestos claim, is not relevant to the question whether Anco timely tendered its claims *under the Policy*.  Third, Robert Kuehn's letter of March 2000, in which he sought permission to review Zurich's files on Anco's asbestos claims, does not refer to the Policy and is irrelevant to the date of tender.  The final items of evidence cited by Anco – its counsel's letter of September 18, 2000 and follow-up letters of January 24 and 25, 2001 – would present a dispute of material fact *if* they were tendered under the Policy; however, those letters refer to Policy No. 9601699, not to the Policy.  We conclude that the district court properly deduced that Anco first tendered the lawsuits on April 23, 2009.

### 2.    Excusal of untimely tender

The district court also rejected Anco's alternative argument that its untimely tender should be excused because National Union breached its duty to investigate the claims.  The court determined that Anco failed to point the court to specific evidence that National Union made false representations about Anco's coverage or about the asbestos exclusion in the Policy.  On appeal, Anco asserts that if we affirm the district court's finding that Anco first tendered the lawsuits on April 23, 2009, we should hold that its own untimely tender is nevertheless excused because: (1) Anco's claims handling and bad-faith expert testified that National Union "should have conducted a policy search for all of the policies it sold Anco and identified them for Anco" when it received the two tenders of asbestos lawsuits in 2000; (2) Mr. Bourgeois testified that "at some stage [in the 1980s] I knew AIG said they had no asbestos coverage under the policy;" and, (3) Mr. Spadacenta allegedly told Mr.

No. 13-31313

Nilson, a Zurich employee, that Anco did not have asbestos coverage under its primary policies.

Our review of the record evidence satisfies us that the district court correctly rejected Anco's contention that its untimely tender should be excused. Although Anco makes much of Mr. Cerone's expert testimony that National Union "should have" conducted a policy search when it received the tenders in 2000,[11] Anco does not cite any law for this proposition. As such, it is irrelevant to the question of when Anco first tendered defense of its claims under the Policy, and the district court properly discounted it. Neither is Anco's contention that Louisiana law imposes a duty on National Union to conduct a policy search on receipt of the tenders of the two asbestos-related lawsuits at all persuasive. The case that Anco cites in support of this proposition – *Vaughn v. Franklin* – presents facts that are easily distinguishable. In *Vaughn*, the excess insurer was a named defendant in the lawsuit, and the co-insurer possessed a copy of the policy under which it sought coverage.[12] In contrast, National Union was not a named defendant in the underlying lawsuits, and Anco was unaware that the Policy existed until it undertook discovery in its declaratory judgment action.

We further conclude that the district court properly determined that Mr. Bourgeois's testimony that National Union denied that it provided asbestos coverage "sometime in the 80's" did not create a material fact issue. There are no contemporaneous documents, such as prior tenders under the Policy that support this assertion. Neither is it consistent with the record as a whole. "[S]peculation, improbable inferences, unsubstantiated assertions, and legalist argumentation do not adequately substitute for specific facts showing a

---

[11] There is no record of the actual tenders from Anco to National Union regarding the *Mason* and *Valdes* lawsuits; only Mr. Spadacenta's letters acknowledging them.

[12] *Vaughn v. Franklin*, 785 So.2d 79, 82 (La. Ct. App. 2001).

## No. 13-31313

genuine issue for trial."[13] Furthermore, Mr. Nilson's letter of August 16, 2000, in which he relates a conversation with Mr. Spadacenta, does not tend to show that National Union misrepresented coverage. Mr. Spadacenta testified that the policies he referred to in the August 16, 2000 letter were the '94, and '95 policies – those that he had listed when he acknowledged the tenders of the two claims in 2000. We are satisfied that the district court correctly determined that Anco's failure to tender its claims timely pursuant to the terms of the Policy should not be excused.

### 3.    Breach of duty to tender claims timely

The district court found that Anco first tendered the lawsuits under the Policy on April 23, 2009, and ruled that Anco's untimely tender was not excusable. Relying on this, the court concluded that National Union was not obligated to reimburse Anco for any of legal costs that it incurred *before* April 23, 2009, and that related back to defending asbestos-related lawsuits filed between 1987 and 2008. The court proceeded to determine that National Union was not required to reimburse Anco for any costs incurred *on or after* April 23, 2009, for lawsuits filed between 1987 and 2008, because Anco had breached the "timely notice" provision of the Policy. Anco challenges this determination on appeal, asserting that Louisiana law requires that, before avoiding coverage, an insurer must demonstrate that it suffered prejudice from its insured's late tender; and that National Union never asserted that it was prejudiced by Anco's untimely tender.

The general rule in Louisiana is that when "the requirement of timely notice is not an express condition precedent [to insurance coverage], the insurer must demonstrate that it was sufficiently prejudiced by the insured's

---

[13] *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

late notice" in order to deny coverage.[14]  This general rule, however, is subject to an exception: When timely notice is an express condition precedent to coverage, "Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent *without* also requiring the insurer to make a particular showing of prejudice."[15]  In *MGIC Indemnity Corporation v. Central Bank of Monroe, Louisiana*, we analyzed a line of Louisiana cases following *Hallman v. Marquette Casualty Company* and *Payton v. St. John*, and concluded that, when a policy requires the insured to comply "fully" with all the terms of the policy as a "condition precedent" to coverage, and, the policy obligates the insured to notify the insurer immediately after a claim is made or suit is brought against the insured, the insured's failure to notify the insurer of the lawsuit promptly relieves the insurer of any obligation for costs expended by the insured in defending the action.[16]

Again, the district court found that Anco first tendered defense of the underlying lawsuits on April 23, 2009.  The Policy required that Anco "immediately" forward any claims, suits, or process received by Anco, and stated that "[n]o action shall lie against the company unless, as a *condition precedent* thereto, there shall have been *full compliance* with all of the terms of this policy."[17]  In line with our precedent and that of the Louisiana courts, we hold that Anco's failure to comply with the notice provision of the policy

---

[14] *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992).

[15] *MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*, 838 F.2d 1382, 1386 (5th Cir. 1988) (emphasis supplied); *see also Jackson v. Transp. Leasing Co.*, 893 F.2d 794, 795 (5th Cir. 1990).

[16] *MGIC*, 838 F.2d at 1386, *id.* at 1387 ("Louisiana cases involving 'condition precedent' or similar language . . . support the proposition that no recovery can be claimed where timely notice has not been given."); *see Payton v. St. John*, 188 So.2d 647, 652 (La. Ct. App. 1966).

[17] Emphasis supplied.

precludes coverage of its untimely tendered lawsuits.[18]   Moreover, because Louisiana law does not require an insurer to demonstrate prejudice as a result of late tender when timely notice is a condition precedent to coverage, we reject Anco's contention that the district court erred in not requiring National Union to show prejudice.   Rather, the district court correctly determined that Anco breached the terms of the Policy by failing to tender its claims immediately. Neither did the district court err in concluding that Anco's failure to comply with the timely notice provision relieved National Union of its obligation to reimburse Anco for costs incurred on or after April 23, 2009 in defending lawsuits filed between 1987 and 2008.

## C.    Statutory penalties

National Union filed another motion for partial summary judgment in opposition to Anco's claim for statutory penalties under La.R.S. §§ 22:1892 and 22:1973, asserting that (1) National Union had assumed its share of defense costs following Anco's tender of the lawsuits in 2009, and (2) Anco had not suffered any loss that would entitle it to statutory penalties.  The district court granted National Union's motion because: (1) Anco failed to plead any conduct that would constitute a violation of Section 22:1973(A), and (2) Anco could not recover penalties under Section 22:1892(B)(1) for the lawsuits filed *after* April 23, 2009 because it failed to show that it suffered any "actual damages" resulting from National Union's alleged failure to participate timely in Anco's

---

[18] *See Hallman v. Marquette Cas. Co.*, 149 So.2d 131, 135-137 (La. Ct. App. 1963) ("One of the terms of the contract herein concerned is that, as a condition precedent to an action against the insurer, the insured shall have fully complied with all of the terms of the policy, one of which is that he shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative."); *see also Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 30 F.3d 630, 634 (5th Cir. 1994) (observing that the "balance of equities" approach endorsed by the Louisiana Supreme Court in *Jackson v. State Farm Mutual Automobile Insurance Company*, 29 So.2d 177 (La. 1946), does not apply when "both parties are sophisticated businesses, which are expected to be conversant with the terms of their contracts"); *MGIC*, 838 F.3d at 1387 (same).

defense. On appeal, Anco challenges the district court's determination that it must show "actual damages" to recover under Section 22:1892, contending that, under the Louisiana Supreme Court's decision in *Oubre v. Louisiana Citizens Fair Plan*,[19] it is not required to do so.

### 1.    Section 22:1892(A)(1)

The law governing this inquiry, Section 22:1892(A)(1), states that "all insurers . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." A party seeking statutory penalties under this statute is required to establish that: (1) The insurer received satisfactory proof of loss, (2) the insurer failed to pay the claim within thirty days, and (3) the insurer's failure to pay the claim was arbitrary and capricious.[20] The insured must prevail on all three prongs to recover a Section 22:1892(B)(1) penalty of the greater of fifty percent of the loss *or* one thousand dollars.[21]

As an initial matter, the district court ruled that Anco's request for statutory penalties relating to underlying lawsuits filed between 1987 and 2008, which were tendered to National Union on April 23, 2009, was moot because the court had dismissed those claims with prejudice. The court then turned to those of the underlying lawsuits that were filed in or after the year 2009. Anco claimed that it had tendered approximately 65 asbestos-related lawsuits under the Policy between January 2009 and March 2010, and alleged that National Union had not timely begun to participate in Anco's defense, despite having made "some response" to the tenders.

The district court accepted Anco's contention that National Union failed to point to evidence that would "demonstrate that it provided a defense to Anco

---

[19] 79 So.3d 987 (La. 2011).

[20] *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009).

[21] LA. REV. STAT. ANN. § 22:1892(B)(1) (2012) (emphasis supplied).

within thirty days after receipt of satisfactory proofs of loss," and ruled that genuine issues of material fact existed on this element of Anco's claim. The court did not make any *specific* finding, however, as to whether Anco provided a satisfactory proof of loss to National Union.[22] Putting aside this dispute of material fact, the court noted that Anco had not cited any specific evidence that it had incurred out-of-pocket costs in defending the underlying lawsuits. The court therefore ruled in favor of National Union on the ground that Anco failed to show that it had suffered actual damages and thus could not recover Section 22:1892 penalties in relation to the underlying lawsuits filed in or after 2009.

### 2.    Satisfactory proof of loss

Before we address Anco's contention on appeal that the district court erred in requiring it to demonstrate actual damages, we address National Union's assertion that Anco failed to adduce proof of loss sufficient to commence the thirty-day period in which to pay the claim. Anco pleaded that it "tendered [65 asbestos lawsuits] for a defense" to National Union in its amended complaint for statutory penalties, but did not allege that this tender constituted proof of loss. National Union points to testimony that its representative placed Anco's bills for defense costs in line for payment pursuant to the proportional sharing agreement with the other insurers, and highlights the district court's statement that the record is "[de]void of any billing records, expense reports, copies of checks, or receipts" that would demonstrate Anco incurred damages. Anco does not respond to this assertion, but repeats its contention that the district court erred in its interpretation of Section 22:1892(B)(1).

---

[22] The district court's analysis conflated the first and second prongs of the test, which require that the insured demonstrate: (1) The insurer received satisfactory proof of loss, and (2) the insurer failed to pay the claim within thirty days. The insurer need only receive information sufficient to trigger it to act on the claim to be found to have received proof of loss. *See Richardson v. GEICO Indem. Co.*, 48 So.3d 307, 314 (La. Ct. App. 2010).

No. 13-31313

Section 22:1892 does not define what constitutes a "satisfactory proof of loss." As the Louisiana Supreme Court recently stated, though, "[i]t is well settled that a 'satisfactory proof of loss' is only that which is 'sufficient to fully apprise the insurer of the insured's claims.'"[23] Although satisfactory proof of loss must include the extent of damages, Louisiana has "adopted liberal rules concerning the lack of formality relative to proof of loss."[24] So long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial.[25] Whether an insured satisfactorily bears its burden of proving "satisfactory proof of loss" is a question of fact that Louisiana courts review for manifest error.[26]

Our inquiry is complicated by the district court's failure to make a specific finding on whether Anco bore its burden on satisfactory proof of loss. The court ruled that a question of fact existed as to whether National Union provided a defense within thirty days following receipt of satisfactory proof of loss, but did not explicitly find that Anco had submitted satisfactory proof of loss. On appeal, National Union contends that, because the district court determined that Anco had not submitted any billing records or expense reports which would support a finding that it had sustained actual damages, we should infer that Anco failed to provide proof of loss sufficient to commence the running of the thirty-day period. We disagree. Proof of loss is a "question of fact." We may not convert the court's finding regarding Anco's failure to submit proof of actual losses to a finding that Anco failed to bear its burden of

---

[23] *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1119 (La. 2008).

[24] *Richardson*, 48 So.3d at 314; *see Youngblood v. Allstate Fire Ins. Co.*, 349 So.2d 462, 465 (La. Ct. App. 1977) (holding that a satisfactory proof of loss need not be in writing).

[25] *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010) (internal quotation marks omitted).

[26] *See Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 236 (La. Ct. App. 2005).

producing satisfactory proof of loss. Although Anco's "tender for defense" of the underlying claims might not constitute satisfactory proof of loss, even under Louisiana's "liberal rules," whether Anco carried its burden on proof of loss is a question of fact which we cannot decide on this record.[27] Nevertheless, as we hold that the district court properly concluded that, to recover statutory penalties, Anco was required to show it suffered actual damages – as we explain below – we decline to remand the case for the trial court to determine whether Anco bore its burden of satisfactory proof of loss.

### 3.    Actual damages

Anco's principal contention on appeal is that the district court erred in holding that it could not recover statutory penalties under Section 22:1892(B)(1) because it failed to show that it had sustained any losses. The law is ambiguous on this question. The district court relied on *Vaughn v. Franklin*, in which the Louisiana First Circuit Court of Appeal held that an insured is not entitled to recover Section 22:1892(B)(1) penalties from a co-insurer that fails to participate timely in the defense of the underlying lawsuit: "While [the co-insurer] acted arbitrarily in failing to provide a defense, the insureds were not harmed."[28] In reversing the trial court's award of penalties, the appellate court noted that "[i]f the legislature had intended to punish insurance companies that failed to share defense costs, it could have done so – but it did not."[29]

On appeal here, Anco contends that Louisiana courts now hold that actual damages are *not* a predicate to recovering Section 22:1892(B)(1) penalties, pointing us to the Louisiana Supreme Court's decision in *Oubre v. Louisiana Citizens Fair Plan.* National Union argues that *Oubre* is

---

[27] *See Richardson*, 48 So.3d at 314.

[28] *See* 785 So.2d 79, 91 (La. Ct. App. 2001).

[29] *Id.*

16

inapplicable because it reviewed the imposition of penalties under a different statute, *viz.*, Section 22:1973(C). Agreeing with National Union, we reject Anco's contention that *Oubre* permits the imposition of penalties for a violation of Section 22:1892(A)(1) under the instant facts. In *Oubre*, the court reviewed whether the statutory penalty for violating Section 22:1892(A)(3) – which relates to catastrophic property damage – is capped at five thousand dollars in the absence of proving actual damages. The court looked first to *Sultana Corporation v. Jewelers Mutual Insurance Company*, wherein it had held that an insured is not required to prove that it suffered actual damages as a prerequisite to recovering Section 22:1973(C) penalties.[30] Because the statutory penalty for violating Section 22:1892(A)(3) is contained in Section 22:1973(C), the court relied on *Sultana*, as well as its own statutory construction, to hold that the five thousand dollar cap acts as a ceiling when damages are not proved.

*Oubre* is distinguishable from the instant case, which concerns the imposition of discretionary penalties under a different statute, Section 22:1892(B)(1). *Oubre* examined Section 22:1973(C), which provides that, *"[i]n addition to* any general or special damages to which a claimant is entitled . . . the claimant *may* be awarded penalties assessed against the insured in an amount not to exceed two times *the damages sustained* or five thousand dollars, whichever is greater."[31] By contrast, Section 22:1892(B)(1) – the applicable penalty provision for National Union's alleged violation of Section 22:1892(A)(1) – states that any such violation *"shall* subject the insurer to a penalty, *in addition* to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand

---

[30] 860 So.2d 1112, 1119 (La.2003); *see also Audubon Orthopedic & Sports Med., APMC v. Lafayette Ins. Co.*, 38 So.3d 963, 974 (La. Ct. App. 2010).

[31] LA. REV. STAT. ANN. § 22:1973(C) (2012) (emphasis supplied).

dollars, whichever is greater."[32]  Although we recognize that both Section 22:1892 and Section 22:1973 cover an insurer's duty to timely pay claims if required under the terms of a policy,[33] their penalty provisions are distinguishable.  The plain language of Section 22:1892(B)(1) contemplates the award of a penalty "*in addition*" to the amount of the actual loss.[34]  Moreover, the imposition of penalties under Section 22:1973(C) is discretionary, unlike those under Section 22:1892, which are mandatory: An insurer's violation of Section 22:1892 "*shall* subject the insurer to a penalty, *in addition* to the amount of loss."[35]  Anco fails to point us to any law – and we have found none on our own – which suggests that we could or should extend the rule announced in *Oubre* to cover Anco's proposed award of penalties under Section 22:1892(B)(1).  As we hold that the district court correctly ruled that Anco's failure to submit evidence that it sustained actual losses as the result of National Union's alleged failure to contribute to defense costs precluded Anco's claim for Section 22:1892 statutory penalties, we affirm the court's grant of partial summary judgment.

---

[32] LA. REV. STAT. ANN. § 22:1892(B)(1) (2012) (emphasis supplied).

[33] *See Reed v. State Farm Mut. Ins. Co.*, 857 So.2d 1012, 1020 (La. 2003).

[34] Emphasis supplied. We acknowledge that Section 22:1973(C) contemplates awarding a statutory penalty "in addition to any general or special damages," which is similar to the formulation in Section 22:1892(B)(1).  Because the penalty is mandatory in Section 22:1892(B)(1), however, as opposed to the discretionary penalty contemplated in Section 22:1973(C), we conclude that this similar – yet not identical – formulation of a penalty does not control our result.  Furthermore, we recognize that Louisiana courts have consistently held that Section 22:1892(B)(1) is "penal in nature and is strictly construed."  *See Sanders v. Wysocki*, 631 So.2d 1330, 1335 (La. Ct. App. 1994).  As such, we shall not read requirements into the statute outside of its plain language.  *See State v. Bedford*, 838 So.2d 758, 760 (La. 2003) ("[T]he legislature is presumed to act with full knowledge of well-settled principles of statutory construction.").

[35] *See Sultana Corp.*, 860 So.2d at 1117 (distinguishing Sections 22:1892 and 22:1973 on the grounds that the former provided for a mandatory penalty, but the latter provides for a discretionary award).

No. 13-31313

## III.　CONCLUSION

The judgment of the district court is AFFIRMED.